RUSSELL v. GRANT, *Appellant.*

Division Two, May 24, 1894.

1. **Mechanics' Lien**: MORTGAGE: PARTIES. A mortgagee of land on which a building is subsequently erected is not bound by a proceeding under the mechanics' lien law (R. S. 1889, secs. 6706 and 6713) to foreclose a lien against the building for materials, unless he be made a party.

2. ———: ———: PRIORITIES. A mortgage for purchase money of land given simultaneously with the deed to the mortgagor takes precedence of a mechanic's lien simultaneously attaching.

3. ———:. FORECLOSURE: CONTRACTOR: PARTY. A valid judgment can not be rendered establishing and foreclosing a mechanic's lien, unless the contractor is made a party to the suit.

4. **Practice**: NONRESIDENT: SERVICE OF PROCESS. A judgment by default against a nonresident defendant is a nullity where the return of the officer who served the process in another state does not show a compliance with the statute under which the service was made.

VOL. 122—11

5. Judgment: STRANGERS: COLLATERAL ASSAULT. A judgment is not binding on the rights of third persons and they may collaterally assail it.

6. Mechanics' Lien: SUIT INTER PARTES. A suit to enforce a mechanic's lien is one *inter partes.*

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

In this proceeding, plaintiff in the court below succeeded in obtaining an injunction perpetually enjoining defendant from removing certain houses built on lots 12 to 18 inclusive, in block 12, "James Goodin Place," an addition to Kansas City. Plaintiff is the purchaser from a purchaser under a deed of trust sale of the properties in question, while defendant relies on a purchase made by him on a foreclosure sale of a mechanic's lien, at which he bought the houses built on the lots.

The substantial facts in the case are these: Prior to October 6, 1888, James T. Holmes was the owner of lots 12 to 18, inclusive, in block 12 of James Goodin Place, an addition to Kansas City. For some days prior to that time negotiations had been pending between Holmes and James Goodin for a sale of the lots to Goodin, and parol negotiations between Goodin and one Joel Harford, for a sale of the lots to Harford, and between Harford and the firm of Harkness & Russell for a loan from the latter on the property. On October 6, 1888, which was Saturday, the negotiations were concluded, and on that day Harford and wife delivered to Harkness & Russell a deed of trust, dated and acknowled October 4, 1888, conveying the lots to L. A. Laughlin, as trustee, to secure a note for $7,050, due in ninety days, given by Harford to

Harkness & Russell. On the same day Harkness & Russell paid on Harford's account $2,200 of the loan to Goodin, as part of the purchase price of the lots. Goodin at once paid part of it to Holmes and received from Holmes and wife a warranty deed of the lots.

On the same day Goodin delivered to Harkness & Russell the deed from Holmes and wife to himself and from himself and wife to Harford; the deed from Goodin to Harford was never delivered to him. On Monday morning, October 8, 1888, Harkness & Russell filed the three instruments for record in the recorder's office at Kansas City, simultaneously. The deed from Holmes to Goodin was recorded at 9:50 A. M., from Goodin to Harford at 9:52 A. M., and from Harford to Laughlin at 9:55 A. M. These deeds were all handed to the recorder at the same time and he of his own head filed them as if they had been handed him at the different times noted on the deeds. For a part of the purchase price in the sale from Goodin to Harford, Goodin took from Harford a second deed of trust on the lots. The lumber to build the houses began to be delivered it seems just before the deeds were filed for record, or at any rate contemporaneously therewith.

Harford proceeded to erect six frame dwelling houses on the lots and the balance of the loan made by Harkness & Russell was paid out by them on orders from Harford for labor and material used in the construction of the houses. On February 19, 1889, the Interstate Lumber Company, a corporation, filed a mechanic's lien against the property for material furnished Harford for building the houses between October 8, 1888, and November 21, 1888; amounting to $2,460.79. The affidavit to the lien statement is made by Walter Delarue. No name appears in the body of the affidavit. The affiant does not state he

makes the affidavit for the company, nor is such allegation made in the petition filed in the suit to enforce the lien, or anywhere in the record proper in that suit.

On the day of filing the lien, the Interstate Lumber Company filed a petition in the Jackson circuit court to enforce the lien. Interstate Lumber Co. *v.* Harford. The petition makes as defendants, Harford as owner and contractor, also Goodin, Harkness & Russell, because of their claiming some interest in the property, which interest was under the deeds of trust in their favor. Besides the usual allegations the petition states that on December 26, 1888, Harford delivered to plaintiff his note for $2,415.05, due sixty days after date for a part of the account sued on. Only $45.74 of the account was not included in the note as shown by the petition. This note was also signed by James Goodin. The petition asks that the lien be established against the real estate and improvements.

On filing the petition a summons was issued for the defendants. Defendants Goodin, Harkness and Russell were personally served in Jackson county on February 20, 1889. Service of an *alias* summons directed to the sheriff of Jackson county, Missouri, was had on Harford in Franklin county, Kansas, on July 24, 1889, by the sheriff of said Franklin county. The return does not show that the affidavit of service is made before the clerk of the court of which affiant is an officer. Nor does the evidence show that the court of which the clerk certifies was a court of record. On April 8, 1889, Harkness & Russell filed an answer to the petition alleging their interest in the premises to be as beneficiaries in the deed of trust from Harford, and that the same was prior to all improvements and denying the other allegations of the petition. Goodin and Harford did not answer, but made default.

The cause came on for trial December 13, 1889, during the October term. Harkness & Russell objected to the introduction of the lien in evidence, which objection was sustained by the court. Thereupon to get rid of the obnoxious defendants, plaintiff dismissed his suit as to Harkness & Russell, and having thus gotten rid of them, the court rendered judgment in its favor. The judgment was rendered December 14, 1889, and was a personal one against Harford for $2,617.05, and established the demand as a lien against the real estate and improvements:

An execution was issued December 21, 1889, on this judgment against the real estate and improvements. Under this execution the sheriff advertised the lots and improvements to be sold on May 23, 1890. On May 16, 1890, the plaintiff Russell, who had purchased the property on March 9, 1889, filed a petition for an injunction in the Jackson circuit court to enjoin this sale. *Russell v. Interstate Lumber Company.* A temporary injunction was granted May 19, 1890, but on final hearing on May 24, 1890, the injunction was dissolved and the petition dismissed. On appeal to the supreme court the judgment of the circuit court was affirmed on the ground the petition showed the sale would be null and void as to the plaintiff. *Russell v. Interstate Lumber Company,* 112 Mo. 40. On June 20, 1890, the execution was returned unsatisfied by the sheriff by order of plaintiff's attorneys.

On May 26, 1890, Goodin filed a motion in the cause to set aside the judgment against him because of irregularity, on the ground the petition showed it should have been rendered for only $45.75. On May 29, 1890, Harford also filed a motion to modify the judgment. On May 31, 1890, the court entered a modified judgment by setting aside the personal judgment as to Goodin and establishing the lien against

the houses only. This was a mistake as to Goodin, as the former judgment was not a personal one against him. This modification was made at the second term of court, after that at which judgment was rendered and no notice of it was given to anyone but Harford and Goodin.

Another execution was issued June 21, 1890, on the modified judgment. This execution was against the houses only. Under this last execution the sheriff levied on the houses and after twenty days' notice of sale by advertisement in a newspaper, sold them at the court house door on July 29, 1890, for $79. At such sale by the sheriff, the houses were purchased by M. R. Grant, the defendant in the suit at bar, but who was acting for the Interstate Lumber Company. This purchase was a purchase by and for the Interstate Lumber Company, defendant; the vice-president of that company, admitting this much in his answer.

The note of $7,050 given by Harford to Harkness & Russell and secured by a deed of trust on the lots was not paid at maturity. Accordingly, at their request, the trustee, Laughlin, pursuant to the provisions of the trust deed, duly advertised and sold the property on February 28, 1889, for $2,500 to C. T. C. White. On March 9, 1889, White sold and conveyed the lots, together with other property, to Russell, the plaintiff in this suit, for an expressed consideration of $25,000.

From the time Russell bought the property up to September 3, 1890, the day this suit was begun, he continued in the quiet and peaceable possession of the lots and houses, claiming to own the same. On that day defendant Grant came upon the premises with several workmen, having apparatus for moving houses, and tore out the foundation of one house and put

Russell v. Grant.

jackscrews under it with the avowed intention of moving it and the other houses off the lots.

Thereupon plaintiff filed his petition in the case at bar, in the circuit court, to enjoin the defendant from moving the houses. A temporary injunction was granted and on final hearing on July 1, 1891, was made perpetual, from which judgment defendant has appealed to this court. The amended petition of plaintiff, filed January 27, 1891, and upon which the case was tried, states the ownership and possession of the lots by plaintiff, and the wrongful acts and threats of defendant. The answer of defendant sets forth the particulars of defendant's claim of title to the houses under the sale in the mechanic's lien suit, including the judgment in said lien suit. The reply of plaintiff states the particulars of his title from Harford and attacks the proceedings and sale in the lien suit on specified grounds of irregularity and want of jurisdiction as heretofore set forth.

*Kagy & Bremermann* for appellant.

(1) It is elementary law that the judgment of a court of general jurisdiction, regular on its face, can not be questioned in a collateral proceeding by the parties thereto or those in privity with them. Black on Judg., secs. 245–260; *McClanahan v. West,* 100 Mo. 308; *Rosenheim v. Hartsock,* 90 Mo. 357; *Boyd v. Ellis,* 107 Mo. 394; *Gates v. Tusten,* 89 Mo. 13. (2) A collateral proceeding is one not instituted for the express purpose of annulling, correcting, modifying or enjoining its execution. Black on Judgments, sec. 252; 12 Am. and Eng. Encyclopedia of Law, 145; *Morrill, v. Morrill,* 11 L. R. A. 155, and notes. (3) Though subject to direct attack, it is only on the ground of want of jurisdiction or fraud in obtaining them.

*Allen v. Sales*, 56 Mo. 28; *McClanahan v. West*, 100 Mo. 309; Black on Judgments, sec. 260; Vanfleet's Collateral Attack, sec. 12. (4) Plaintiff's petition is silent as to the judgment, but is an ordinary suit to enjoin a trespass. The judgment under which defendant claims is pleaded in his answer. Plaintiff assails this judgment by a reply which is a collateral attack. *Morrill v. Morrill, supra.* Plaintiff, as he claims, is a stranger to the judgment. If this be true he has no right to attack it or seek its impeachment in this proceeding. *Gates v. Tusten*, 89 Mo. 13; *Hardin v. Lee*, 51 Mo. 241; Black on Judgments, sec. 260; Freeman on Judgments [3 Ed.], sec. 512; *Adams v. Cowles*, 95 Mo. 501; *Yeoman v. Young*, 83 Mo. 428. (5) Jurisdiction of the subject-matter is the power to hear and determine cases of the class to which it belongs. The court had jurisdiction in mechanics' lien cases. *Leonard v. Sparks*, 22 S. W. Rep. 899. (6) Harkness and Russell were not necessary parties, for they had no interest in the subject-matter of the suit when the judgment was rendered. They had foreclosed their deed of trust and had the proceeds in their pockets. Their lien had spent its force and no longer attached to the premises. Nor were they necessary parties, for the further reason that their lien was junior to that of the material man. *Buford v. Smith*, 7 Mo. 490; *Watson v. Watkins*, 60 Mo. 550; *Lumber Co. v. Ballentine*, 2 Mo. Legal News, 600; R. S. 1889, sec. 6707; Jones on Mortgages, sec. 1425. (7) That the affidavit was defective, can not affect the judgment rendered. It was pleaded and the trial court passed upon its sufficiency. This was a matter of judicial inquiry, and even though the court erred, its error will not affect the judgment. *Cooper v. Reynolds*, 10 Wall. 318; *Ludlow v. Ramsey*, 11 Wall. 581; *Boyd v. Ellis*, 107 Mo. 394; Black on Judgments, secs. 268–288; *Shaw v. Mitchner*, 84 Mo. 546;

*Gilbert v. Towler*, 116 Mass. 375; *Hallock v. Downing*, 7 Hun, 52; *Hutchinson v. Cutting*, 14 Minn. 537; *Lingo v. Burford*, 112 Mo. 149, and cases cited. (8) Russell, the plaintiff, acquired what title he has pending the suit to foreclose the lien and before judgment rendered. Hence it follows that Russell was a privy and bound by the judgment. *Turner v. Babb*, 60 Mo. 342; *Stantimore v. Clark*, 70 Mo. 471; *Rosenheim v. Hartsock*, 90 Mo. 357; *Gray v. Bowles*, 74 Mo. 419; *Hart v. Steadman*, 98 Mo. 452; *Stevenson v. Edwards*, *Ibid.* 662; *Holloway v. Holloway*, 103 Mo. 284; Freeman on Judgments [3 Ed.], sec. 201; Black on Judgments, sec. 550; Herman on Estoppel, secs. 185, 186. (9) The judgment in controversy was on the foreclosure of a mechanic's lien. If not a proceeding *in rem*, it was at least *quasi in rem*. Waples on Pro. in Rem. sec. 619, and case cited in note 1; Phillips on Mechanics' Liens, secs. 305, 306. (10) The point that the lien is upon houses situate upon separate lots, and does not state that the materials are furnished under one general contract, is without merit. (11) Plaintiff is estopped from asserting any interest, other than that acquired from White. In his answer he disclaims any interest, except that he had a deed of trust. He can not assume inconsistent positions. *Jordon v. Stevens*, 55 Mo. 361; Herman on Estoppel, secs. 817, 818, 820. (12) That the note was not due when the suit was brought can not affect the judgment. It was surrendered, as plaintiff had a right to do, and suit brought on the account. *Ashdown v. Woods*, 31 Mo. 465; *McMurry v. Taylor*, 38 Mo. 263; *Mikaska v. Blum*, 63 Texas, 44; *Robertson v. Huffman*, 92 Ind. 247. (13) The contention that service was bad has no merit. Not only was the service in conformity to the statute, but Harford appeared and moved to have the judgment modified. (14) Plaintiff mistook his rem-

edy, if any he has.   If the judgment is not conclusive against him he had a right to redeem.   The cases in this state clearly establish this point.   *Hauser v. Hoffman*, 32 Mo. 334; *Shaffer v. Lohman*, 34 Mo. 63; *Mississippi Mill v. Church*, 54 Mo. 525; *Heim v. Vogel*, 69 Mo. 535; *Crandall v. Cooper*, 62 Mo. 478; *Coe v. Ritter*, 87 Mo. 277; *Deters v. Renick*, 37 Mo. 597; *Real Estate Ins. Co. v. Hazeltine*, 53 Mo. App. 308; *Williams v. Brownlee*, 101 Mo. 309; *Olmstead v. Tarsney*, 69 Mo. 396; *Plum v. Studebaker*, 89 Mo. 162; Jones on Mortgages, sec. 1424; *Lumber Co. v. Ballentine*, 2 Mo. Legal News, 600.   (15) Plaintiff's contention that Harford had no interest when he made contract with lumber company has no merit.   Harford was in possession under a contract of purchase which was subsequently consummated.   R. S. 1889, sec. 6726; *Judd v. Duncan*, 9 Mo. App. 417; *O'Leary v. Roe*, 45 Mo. App. 567, and cases cited.

*L. A. Laughlin* and *Lathrop, Morrow & Fox* for respondent.

(1) The injury threatened was irreparable and plaintiff was without an adequate remedy at law, hence an injunction will be sustained.   R. S. 1889, sec. 5510; Pomeroy's Eq. Jur., sec. 1357; High on Injunctions [3 Ed.], sec. 481; Spellman on Extraordinary Relief, sec. 349; *Turner v. Stewart*, 78 Mo. 480; *McPike v. West*, 71 Mo. 199.   (2) A mechanic's lien is the creation of statute, and proceedings to enforce it are unknown, either at law or in equity.   At every stage of the proceeding, compliance with statutory directions is essential; for, independently of statute, no equitable principles exist which can aid it.   Phillips on Mechanics' Liens [3 Ed.], secs. 1, 9, 15, 297; *Doellner v. Rogers*, 16 Mo. 340; *Forcht v. Short*, 45 Mo. 377.

(3) Proceedings to enforce a mechanic's lien are *sui generis*. They are partially *in rem* and partially *in personam*, and are best designated as *quasi in rem*. Phillips on Mechanics' Liens [3 Ed.], secs. 305, 308; *Hassall v. Wilcox*, 130 U. S. 493; *Windsor v. McVeigh*, 93 U. S. 274.   (4) In this state the failure to make the beneficiary in a prior deed of trust on the land a party to the lien suit impresses the lien on the equity of redemption only in the land and improvements, and on foreclosure of the deed of trust the lien is cut off. Phillips on Mechanics' Liens [3 Ed.], sec. 395; *Fire Clay Works v. Ellison*, 30 Mo. App. 67–75; *Crandall v. Cooper*, 62 Mo. 478; *Coe v. Ritter*, 86 Mo. 285; *Milam v. Bruffee*, 6 Mo. 635.   (5) If the lien is prior to the deed of trust and the beneficiary is not made a party to the lien suit, then in any proceeding where it is sought to bind his interest by the judgment enforcing the lien, the lien must be established step by step against him, and the same defenses are available to him as in the lien suit, if he had been a party to it. He may also redeem from the judgment.   *Hauser v. Hoffman*, 32 Mo. 338; *Schaeffer v. Lohman*, 34 Mo. 68; *Heim v. Vogel*, 69 Mo. 529; *Horn v. Jones*, 28 Cal. 195, 204.   (6) The time for enforcing the lien against the interest of Harkness & Russell or their privies has expired by limitation. R. S. 1889, sec. 6720; *Burbank v. Wright*, 44 Minn. 544; *Hokanson v. Gunderson*, 56 N. W. Rep. (Minn.) 172; *Smith v. Hurd*, 52 N. W. Rep. (Minn.) 922; *Fury v. Boeckler*, 6 Mo. App. 24; *Smith v. Barrett*, 41 Mo. App. 460.   (7) The pleadings in the lien suit related to the condition of the parties at the time the lien suit was begun.   *Weinwick v. Bender*, 33 Mo. 80; *McDowell v. Morgan*, 33 Mo. 555.   (8) White and Russell were not purchasers *pendente lite* and are not privies to the judgment in the lien suit. The filing of a lien is not the bringing of a suit.   *McMurry*

*v. Taylor,* 30 Mo. 263; *Gosline v. Thompson,* 61 Mo. 471. (9) The doctrine of direct and collateral attack upon judgments has no application, if section 6713, is a rule of evidence. (10) The mortgage of Harkness & Russell was prior to the lien of the Interstate Lumber Co. *Steininger v. Raeman,* 28 Mo. App. 594; *Sheer v. Cummings,* 80 Tex. 294; *Monroe v. West,* 12 Iowa, 119. (11) The lien paper is fatally defective. Daniel's Chy. Prac. [5 Ed.], sec. 894; *Lumber Co. v. McCumsley,* K. C. Court of App., unreported; *Lumber Co. v. Weber,* 43 Mo. App. 179; *Mackey v. Hyatt,* 42 Mo. App. 443; *Gilkerson v. Knight,* 71 Mo. 404; *Johnson v. Gilkerson,* 81 Mo. 55; *Irwin v. Evans,* 92 Mo. 472. (12) It appears upon the face of the petition in the lien suit that the suit was prematurely brought and that the court had no jurisdiction over the subject-matter. R. S. 1889, secs. 3318, 6159; *Steamboat v. Hammond,* 9 Mo. 59; *Same v. Lumm,* 9 Mo. 64; *Schepflin v. Dessar,* 20 Mo. App. 569; *Bertiaux v. Dillon,* 20 Mo. App. 603. (13) The return of service on Harford in the lien suit was insufficient and the court acquired no jurisdiction over his interest in the property. R. S. 1889, sec. 2029; *Steinmann v. Strimple,* 29 Mo. App. 478; *Steinkamper v. McManus,* 26 Mo. App. 52; following *Wibbing v. Powers,* 25 Mo. 599; *Ashburn v. Ayres,* 28 Mo. 77; *Wescott v. Bridwell,* 40 Mo. 146. (14) The modification of the judgment in the lien suit made at a subsequent term of court and under which appellant claims title was illegal and void.

SHERWOOD, J.—I. Our statute in relation to mechanics' liens provides that: "The lien for the things aforesaid, or work, shall attach to the buildings, erections or improvements for which they were furnished or the work was done, in preference to any prior lien or incumbrance or mortgage upon the land upon

which said buildings, erections, improvements or machinery have been erected or put; and any person enforcing such lien may have such building, erection or improvement sold under execution, and the purchaser may remove the same within a reasonable time thereafter." R. S. 1889, sec. 6707.

"The lien for work and materials as aforesaid shall be preferred to all other incumbrances which may be attached to or upon such buildings, bridges, or other improvements, or the ground, or either of them, subsequent to the commencement of such buildings or improvements." R. S. 1889, sec. 6711.

"In all suits under this article the parties to the contract shall, and all other parties interested in the matter in controversy or in the property charged with the lien may, be made parties, but such as are not made parties shall not be bound by any such proceedings." R. S. 1889, sec. 6713.

Under the first quoted section, the priority of a mortgage on the *land*, would still allow the mechanic lienor a priority over the *improvements* put upon the land, while by the terms of section 6711, a mechanic's lien would enjoy preference and priority both as to land and improvements over a subsequent mortgage. But whether the mechanic's lien have priority of the mortgage or *vice versa*, the necessity for the lienor when proceeding to establish and to foreclose his lien (for the process is a *two fold* one) to make the mortgagee a party would seem to be most obvious. And this is true, notwithstanding the singularly worded provisions of section 6713 *supra*.

That no one can be passed on in person or estate without an opportunity afforded him to be heard, is axiomatic. If the section in question had been entirely *silent* as to making parties to the proceedings other than those who are parties to the contract, still the law

would intend that such noncontracting parties, should be brought in before their rights could be passed upon. Cases abound in this state and elsewhere announcing this fundamental and wholesome doctrine of the essential nature of notice to the party to be affected, and that that notice will be implied, though the statute be silent on the point. *Laughlin v. Fairbanks*, 8 Mo. 370; *Wickham v. Page*, 49 Mo. 526; *Brown v. Weatherby*, 71 Mo. 152; *State ex rel. v. Board of Equalization*, 108 Mo. 235; *State ex rel. v. Walbridge*, 119 Mo. 383; Sutherland on Stat. Construction, sec. 334, and cases cited. Provision for notice is part and parcel of "due process of law." Cooley on Taxation [2 Ed.], 363, 364.

In *Hassall v. Wilcox*, 130 U. S. 493, a ruling was made quite *apropos* the point in hand; there the state law made no provision for notice to other lienholders, but provided that such lienholders might intervene and become parties to a suit instituted in the state court, and gave the holder of a mechanic's lien priority over all other liens, and though a suit was brought in the state court and judgment recovered by the mechanic lien holder against the railroad property, yet it was held that as to a plaintiff lienor under a mortgage not made a party to such proceeding, the judgment in the state court could not operate even as *prima facie* evidence against the mortgage lienor, and might be questioned by him in the federal court in a proceeding in that court to foreclose the mortgage. In that case the former ruling of *Windsor v. McVeigh*, 93 U. S. 274, is cited with approval, where it is held that even in a proceeding *in rem* some form of notice is as essential and indispensable as in other cases.

Take the case of a mortgagee who holds a mortgage on certain land; afterwards a building is erected thereon, and a lien paper is filed against that building.

If that lien paper is in any sense invalid or suit be not brought thereon in time, then the mortgagor becomes the absolute owner of the building, subject, however, to the rights of the mortgagee who has rights superior to those of the lien debtor, and, therefore, has a right to be heard when the mechanic's lienor attempts to establish his lien against the building or against both building and land and to foreclose the same; because, peradventure, he may be able to show invalidating facts, to wit, that the lien paper was not filed in time; that it was not properly itemized; or not properly authenticated; or suit not brought within the proper time. All these and other invalidating facts are open to the mortgagee, whether prior or subsequent, to prove. If he prove any one of them, he defeats the establishment of the lien, and also its foreclosure. In order that he may do this, an opportunity to be heard is a *sine qua non*, and must be given him. Unless this opportunity be afforded him, he is not "*bound*," that is, "*affected*" thereby, or as said by WAGNER, J., in similar circumstances: "As Clark (the beneficiary) was not made a party to the proceedings for the enforcement of the mechanic's lien, he was a stranger to them, and they have no force or effect upon him." *Crandall v. Cooper*, 62 Mo. *loc. cit.* 480.

In this connection it is proper to remark that a *mechanic's* lien is wholly unlike a *contract* lien, in that the former is inchoate, and has no existence until established by the judgment of the court, but the contract lien binds upon being delivered and recorded. The contract lien can not be gainsaid; it dates from its registry; while the mechanic's lien dates from the date of the rendition of the judgment which establishes it and into which it becomes merged. In order to prevent the establishment of this lien, in order to show it can not legally be established on property in which

he is interested, and of. which he is the conditional, and may become the absolute, owner, the mortgage lienor has a right to be heard. In the language· of Judge RICHARDSON in *Clark v. Brown*, 25 Mo. 560, in a similar case, "the law repudiates the idea of condemning the property of one man to pay the debt of another, without giving him an opportunity in court, upon due service of process, of showing that the claim ought not to be asserted against his property."

The latter portion of the opinion in *Crandall's case* has given rise to some misapprehension, to wit: "The purchaser might have bought the erections· and improvements freed from all liens, and would have been entitled to recover them, and this is all that he could have acquired." This remark, in the first place, was *obiter*, because the purchaser had *not* bought the *improvements*. The case had already been disposed of on a contract basis, and what Judge WAGNER evidently meant, having previously referred to the statute requiring notice, was this: "If Clark had been a party to the lien suit, he would have been bound thereby and the purchaser might have bought the improvements, etc." Construing the case in this way, it gives effect to section 6713, in its entirety, and prevents any intended or attempted wrong, and affords no opportunity for the perpetration of any injustice.

And in this connection it is well enough ·to say that the fact that the prior mortgage lienor had *previously bought in the property under the deed of trust*, does not diminish his right to be heard when the suit to establish and foreclose the mechanic's lien comes on, because, even then, he has a right to be heard in order that· he may 'protect his property from the assertion and establishment of an unjust or nonexistent lien.

The doctrine in *Crandall's case*, affirmed in *Coe v. Ritter*, 86 Mo. 277, has recently been reaffirmed by

division number 1 of this court in *Hicks v. Scofield*, 121 Mo. 381.

II. In the foregoing remarks the lien of Harkness & Russell has been treated as the *prior one*, and so it should be treated, and for these reasons:

*a.* Under the provisions of section 6706, Revised Statutes, 1889, the mechanic's lien attaches "*to the extent and only to the extent of all the right, title and interest owned therein by the owner,*" etc. In the case at bar, as already seen, the deed to Harford was never delivered to him, but all the deeds from Holmes to Goodin, from the latter to Harford and the deed of trust from the last named to Harkness & Russell, were all handed Harkness & Russell on the sixth of October, 1888, who, on the eighth of October next thereafter, handed them all to the recorder for recording. Harford never acquired any title before that time. It does not clearly appear when the first load of lumber was delivered on the premises by the Interstate Lumber Company; the best that can be said about it is, that it was delivered about 9 A. M. on the same morning the deeds were put to record. If this delivery of the first lot of lumber was before Harford acquired any title to the property, though work on the premises had actually begun, the lien of the mechanic would postdate a mortgage given for the purchase money; and of course the same result would follow if the mortgage were really prior in point of time. *Steininger v. Raeman*, 28 Mo. App. 594.

And it seems that a mechanic's lien under the terms of section 6706, only attaches to the property *in the condition in which it comes into the mortgagor's hands*. If he purchase property and give a mortgage for the purchase money, the deed which he receives and the mortgage which he gives, constitute but one

transaction, and the lien of the mortgage for the purchase money can not be displaced or postponed by a mechanic's lien which attached simultaneously with the acquisition of title by the mortgagor. 1 Jones on Mortgages, sec. 158; *United States v. Railroad*, 12 Wall. 362; *Steininger's case, supra.*

*b.* But further on this point: "If a husband takes a conveyance in fee, and at the same time mortgages the land back to the grantor or to a third person to secure the purchase money, either in whole or in part, such a transitory seisin by the husband, the instantaneous passage of the fee in and out of him, is not deemed enough to render him sufficiently and beneficially seized to entitle his wife to dower as against the mortgagee, though on foreclosure of the mortgage, she will be entitled to such portion of the surplus proceeds of the sale after satisfying the mortgage, as equals her claim to the extent of her dower. 4 Kent's Com. [13 Ed.], star p. 39. Now, if dower, the favored and favorite estate both at law and in equity, can not attach, in the circumstances stated, to the temporary seizin of the husband, certainly a like result should follow where a lien *in invitum,* one strictly statutory in its nature and limited by the terms of the statute to the precise extent of the owner's title, is attempted to be established.

*c.* In this case, as heretofore stated, the Interstate Lumber Company after recovering a judgment establishing and foreclosing its lien against both the *lots and the improvements,* would not sell under the judgment thus obtained, but at a subsequent term caused that judgment to be *altered,* so as to establish the lien against the *improvements only.* This modification, however unwarranted it was, and contrary to all known rules of practice and procedure, must be treated as a tacit but substantial confession of record of the fact that

the plaintiff company in that case was only entitled to a lien against the houses, and thereby confesses the priority of the mortgage lien under which plaintiff bought.

III. No valid judgment can be rendered establishing and foreclosing a mechanic's lien, unless the contractor is brought, or voluntarily appears, before the court as a party to the suit.   This was not done in this case, because of lack of proper service on Harford, both the contractor and owner of the property.    R. S. 1889, section 6713.

In *Wibbing v. Powers*, 25 Mo. 599, Judge SCOTT said: "The contractor is the only person who can contest the validity of the demand; and as the proceeding was dismissed as to him, there was no person to defend the claim of the plaintiff.   This case is as if a creditor, proceeding by attachment and garnishment, should dismiss his suit against the defendant—the debtor—and afterwards take steps against the garnishee, when there could be no*judgment which he could be condemned to satisfy."    See, also, *Ashburn v. Ayres*, 28 Mo. 77; *Steinmann v. Strimple*, 29 Mo. App. 478; *Wescott v. Bridwell*, 40 Mo. 146.

Here the service on Harford was made in Kansas, professedly under the provisions of section 2029, Revised Statutes, 1889.   But the return of the sherff of that state, is not sufficient under the provisions of the section of the statute just mentioned.   That section requires that the affidavit of service should be made "before the clerk or judge of the court of which affiant is an officer."   This clause is not to be found in the affidavit, and of course it is a nullity and the return of service worthless; and since the judgment against Harford was by default, the circuit court was without jurisdiction to render any judgment in the case.   The invalidity of the return of an officer made outside of this state must accomplish equally as detrimental re-

sults as within this state, and, when made within this state, it has been ruled in several cases, that a judgment based thereon is null. *Brown v. Langlois*, 70 Mo. 226, and cases cited.

IV.   It has been urged that the plaintiff can not attack collaterally the judgment rendered in the mechanic's lien suit. But there is no doubt that a stranger whose interests are about to be prejudiced by the enforcement of the judgment, may show that it was rendered without jurisdiction. 2 Freeman on Judg. [4 Ed.], sec. 337; 1 *Ibid.*, sec. 154. Besides, a judgment can not bind the rights of a stranger. *Ibid.*, sec. 154; 1 Black on Judgments, secs. 218, 219, 220.

V.   Something has been said about the proceeding to enforce a mechanic's lien being one *in rem*, but this is incorrect. This is a proceeding *inter partes* and so appears by the record itself. 2 Freeman on Judgments, sec. 606, and cases cited; *Dunphy v. Riddle*, 86 Ill. 22.

But if even if such were the nature of the proceeding, it would bind no one not made a party to it and would not be even *prima facie* evidence against such non-notified person. *Hassall v. Wilcox*, 130 U. S. 493; *Windsor v. McVeigh*, 93 U. S. 274, *supra*.

There are numerous other and fatal errors which might be noted in the proceeding which plaintiff was successful in enjoining, but it is quite unnecessary to do so.   Decree affirmed.   All concur.