SIMON DEVINE WELDING COMPANY, Inc., a Corporation (Plaintiff), Respondent,

v.

Catherine KUHN (Defendant), Appellant.

No. 30225.

St. Louis Court of Appeals.

Missouri.

Nov. 17, 1959.

Motion for Rehearing or to Transfer to Supreme Court Denied Dec. 15, 1959.

Blumenfeld & Abrams, Selden Blumenfeld, St. Louis, for appellant.

David H. McGhee, St. Louis, Melvin L. Hertzman, St. Louis, of counsel, for respondent.

ANDERSON, Judge.

This is an action to recover the reasonable value of labor and material expended in the repair of a steam heating boiler in an apartment building located in the City of St. Louis and known as 6275 Enright Avenue, and to establish a mechanic's lien. The building was owned by the Harry M. Fine Real Estate Company but title was in Catherine Kuhn as a straw party. The suit was brought by the Simon Devine Welding Company, Inc., the concern that did the repairs, against Catherine Kuhn. The trial resulted in a personal judgment against Catherine Kuhn and the establishment of a mechanic's lien against said property. From this judgment, defendant has appealed.

On November 2, 1953, Harry Fine, President of the Real Estate Company, employed Sam Karfield, a plumber, to repair a safety valve on the boiler in question. Karfield examined the boiler and found that it was leaking and needed welding. Such work was not in Karfield's line, so he called on Mr. Eskridge, President of the Simon Devine Welding Company, and requested him to look at the boiler and give a price on the amount required to repair it. Karfield testified he went to Mr. Eskridge on his own, without any one instructing him to do so. Mr. Eskridge did look at the boiler and later called Mr. Karfield on the telephone and told him there was a leak in one of the sections of the boiler and evidence of other leaks. Eskridge also told Karfield that the boiler would have to be dismantled in order to make the necessary repairs. Karfield testified that he asked Eskridge how much it would take to repair the boiler, and Eskridge replied: "Well, three to five hundred dollars." Eskridge denied that he quoted a price for making the repairs, stating he could not do so because there was evidence that other sections of the boiler were deteriorated. Karfield told Eskridge to call Harry Fine about the matter, stating he could not give him the order. Eskridge testified that Karfield "indicated that Harry Fine Real Estate Company had employed him and that they were the owner." Eskridge did talk to Fine on the telephone that same evening and told him what had occurred prior to that. Eskridge testified he told Fine that the boiler had a pipe leading into it which had been repaired and re-

placed, but the boiler would not hold water because the sections were deteriorated, with considerable leakage between two of the sections and evidence of more leakage through the entire boiler. Eskridge stated he told Fine that the entire boiler would have to be dismantled in order to find out the nature of the repair that would be necessary, and denied quoting an estimate of the cost of repairs.

Harry Fine had talked to Karfield prior to his conversation with Eskridge, and in that conversation Karfield had told Fine what had transpired and informed him that Eskridge had stated the job would run between $300 and $500. Fine testified that when he thereafter talked with Eskridge, he said to Mr. Eskridge: "Mr. Eskridge, Karfield informs me he had you go out and look at the boiler at 6275 Enright, and you informed him it would cost between three and five hundred dollars to fix that boiler * * * why is there such a spread?", and that Eskridge replied: "Well, that is the way it is, because when we get in there we might find something else, but the cost will be between three and five hundred dollars." Fine further testified: "I also informed Mr. Eskridge at the time that Karfield was not sent there for a leaking boiler; that he was sent there to fix a valve, and all of a sudden the boiler popped up leaking. * * * I informed him I would talk to Karfield again." Fine further testified that he talked again to Karfield and in that conversation told Karfield to "go ahead and take care of it."

Thereafter, plaintiff commenced the repair of the boiler. The entire boiler, which consisted of eight sections, was dismantled. Five of the sections were found repairable, and two sections found beyond repair. It was necessary to replace these two sections. In addition, a new boiler base and base front were built, a low water cut-off installed, and the boiler recovered with asbestos. The job was completed on November 18, 1953. Thereafter, plaintiff billed the Harry M. Fine Real Estate Company for the work and labor performed in the sum of $939. Eskridge testified that the amount charged was fair and reasonable, and was the customary charge in the trade for that class and type of work. A lien claim was filed in the office of the Circuit Clerk on May 5, 1954, for labor done and material furnished under contract with Catherine Kuhn, as owner of the premises.

Eskridge testified that he never talked to Catherine Kuhn at any time, either before or after making the repairs to the boiler, and never billed her for this work.

Catherine Kuhn was employed by the Harry M. Fine Real Estate Company. Her duties, according to her testimony, were to "write up the papers, make up deeds of trust, various work." She also testified that she made some of the entries in the books and ledgers, and held title as a straw party for the Harry M. Fine Real Estate Company. She was shown a record of the Harry M. Fine Real Estate Company, which was a card on which there were noted various repairs to the property at 6275 Enright, and testified that she wrote the entry, "11/2/53, 6275 Enright. Tear down boiler and repair. Simon Devine, $300–$500, Mr. Eskridge." She made this entry when Mr. Fine told her on November 3 that he had let out the job.

Appellant contends that the court erred in rendering a personal judgment against Catherine Kuhn and, by its decree, establishing a lien against the property.

The statutory law with reference to mechanic's and materialmen's liens is contained in Chapter 429 RSMo 1949, V.A.M.S. Section 429.010 thereof provides: "Every mechanic or other person, who shall do or perform any work or labor upon, or furnish any material, fixtures, engine, boiler or machinery for any building, erection or improvements upon land, or for repairing the same, under or by virtue of any contract with the owner or proprietor thereof * * * *upon complying with the provisions of sections 429.010 to 429.340,*

shall have for his work or labor done or materials, fixtures, engine, boiler or machinery furnished, a lien * * *." (Emphasis ours.)

Section 429.150 provides: "Every person, including all cestui que trust, for whose immediate use, enjoyment or benefit any building, erection or improvement shall be made, shall be included by the words 'owner or proprietor' thereof * * *."

Section 429.190 provides: "In all suits under sections 429.010 to 429.340 *the parties to the contract shall,* * * * be made parties, * * *." (Emphasis ours.)

It is clear from the record in this case that the labor and materials that went into the repair of the boiler in question were furnished under a contract with the Harry M. Fine Real Estate Company. It is also clear from the evidence that said company was an owner of the premises within the meaning of Section 429.150, supra. Section 429.190 makes it mandatory that the parties to the contract be made parties to the suit before a plaintiff may invoke the provisions of the mechanics' and materialmen's lien law. Therefore, since plaintiff failed to make the Harry M. Fine Real Estate Company a party defendant, the court did not acquire jurisdiction over the subject matter of this suit, and the judgment establishing the lien is void. Harrison v. Creason, 238 Mo.App. 118, 176 S.W. 2d 849.

Since defendant, Catherine Kuhn, was not a party to the contract, and cannot on any theory be held liable for the debt contracted by the Harry M. Fine Real Estate Company for its own benefit, the personal judgment against her cannot stand

The judgment appealed from is reversed.

WOLFE, P. J., and RUDDY, J., concur.