**L. VASQUEZ,** Plaintiff-Respondent,

v.

**VILLAGE CENTER, INC.,** Defendant,
**John Dooly,** Defendant-Appellant.

No. 49448.

Supreme Court of Missouri,

Division No. 1.

Dec. 11, 1962.

Walter S. Berkman, St. Louis, for John Dooly, co-defendant-appellant.

Boyle, Priest, Elliott & Weakley, Howard Elliott, Edward D. Weakley, St. Louis, for Leo Vasquez, respondent.

COIL, Commissioner.

Respondent L. Vasquez, the plaintiff below, an excavating and grading contractor, brought an action against Village Center, Inc., for $12,606.12 and interest thereon, the balance due for labor performed allegedly at the special instance and request of Village Center, and to have real estate owned by appellant John Dooly impressed with a mechanic's lien for the amount of such judgment. The jury returned a verdict, including interest, for $16,271.91, and found that the plaintiff had perfected and established the right to a mechanic's lien against the realty. Dooly alone has appealed and contends that the judgment impressing his property with a mechanic's lien was void because the trial court was without jurisdiction, erred in failing to direct a verdict for him, and erred in giving instructions on behalf of plaintiff.

All the evidence in the case was adduced by plaintiff and we state it from a standpoint favorable to him. Edward Bilhorn testified that he and his brother-in-law, James J. Nicholson, and Terry Nicholson, from 1953 until sometime in 1956, constituted the officers and directors and owners of all the stock of Nicholson & Bilhorn, Inc., a corporation which was engaged in real estate development and that, beginning in 1954, that company was engaged in developing about 200 acres of land in the vicinity of Manchester and New and Old Ballwin Roads in St. Louis County involving approximately 500 homesites in various sections of an area known as Ballwin Hills. Those homesites were developed (construction began in 1954) by a subsidiary corporation of Nicholson & Bilhorn, Inc., viz., Suburban Homes, Inc. A plot of ground fronting approximately 1,300 feet on the south side of Manchester Road and running southwardly for approximately 300 feet was to be developed as a commercial tract (a shopping center) by another subsidiary corporation of Nicholson & Bilhorn, Inc., to be known as Village Center, Inc., to be owned and operated by the same three

individuals, i. e., the two Nicholsons and Edward Bilhorn.

All of the land, including the homesites and the commercial property, was acquired under one purchase contract and record title was taken in the names of James Nicholson and his wife and, at some later time (the exact date was not shown), all of the land was deeded by James Nicholson and his wife to Nicholson & Bilhorn, Inc. The plaintiff did grading and excavating in connection with the development of the residential homesites during 1954, 1955, and 1956.

Mr. Bilhorn, on behalf of Village Center, Inc. (Village Center, Inc. had not then been incorporated, a matter to which we shall later refer), ordered plans for the development of the tract from an architect. Those plans, dated February 20, 1955, purported to show a floor plan for buildings and facilities, including a parking area for the proposed shopping center. According to the testimony of both the plaintiff and Edward Bilhorn, in April or May of 1955 Mr. Vasquez attended a conference on the proposed commercial site. Present also were Edward Bilhorn, James Nicholson, and Terry Nicholson, and probably the construction superintendent for Nicholson & Bilhorn, Inc. The plans, including a sketch which showed the elevations for the proposed buildings, were displayed to Mr. Vasquez and the work that it was desired that he perform was explained to him. The land in question was rough, there was a large creek meandering through it, there was a steep hill on the southwest corner, some low and swampy parts in the center and there were some places where the land adjoining Manchester Road was six feet below the level of that road. Plaintiff was told that he was to realign the creek, prepare the ground for parking lots, prepare subgrades for the planned buildings and provide access to the shopping center along the frontage on Manchester. The rates were agreed upon in detail providing for hourly rates for the use of various types of

equipment. Mr. Vasquez was employed on behalf of Village Center, Inc., the corporation which was planned as a subsidiary of Nicholson & Bilhorn, Inc., to develop the commercial tract.

Plaintiff proceeded to do the work as directed during the remainder of 1955 and in 1956, completing the job on August 21. He worked under the control and direction of Edward Bilhorn and performed the work agreed upon. The total charges figured at the stipulated rates amounted to $15,606.12. In December 1955, a $3,000 payment was made by a check of Nicholson & Bilhorn, Inc., leaving a balance due of $12,606.12.

Mr. Bilhorn testified that Vasquez was the general contractor and, according to the evidence, plaintiff was the only contractor involved in any work on the land in question prior to the time it was conveyed to Mr. Dooly on December 10, 1956. No buildings had been constructed on the property by the time it was conveyed to Dooly.

In August 1955 the corporation, Village Center, Inc., was formed as theretofore planned by James and Terry Nicholson and Edward Bilhorn. They were the officers and directors, owned all the stock, and conducted its business in accordance with the plan which existed at the time title to the property was taken in the names of James Nicholson and his wife. The commercial site in question was conveyed to Village Center, Inc., on April 2, 1956. Plaintiff understood that the work he performed on the commercial tract in 1955 and 1956 was on a separate project and that the work was to be done for Village Center, Inc. Mr. Vasquez did not know Mr. Dooly and had had no dealings with him.

Appellant Dooly contends that the judgment impressing his land with a mechanic's lien is void because, he says, the court was without jurisdiction of the case inasmuch as the parties to the contract were not made parties to the action as required by statute.

Section 429.190 [1] mandatorily requires that the parties to the contract be made parties to a mechanic's lien action. Harrison v. Creason, Mo.App., 238 Mo.App. 118, 176 S.W.2d 849; Hughes Bros. Paint & Hardware Co. v. Prewitt, 170 Mo.App. 594, 157 S.W. 120, 121 [3, 4]; Simon Devine Welding Co. v. Kuhn, Mo.App., 329 S.W.2d 249, 252 [1–3]. The contract referred to in the statute is the agreement made for the performance of the work or for the furnishing of materials. Harrison v. Creason, supra, 176 S.W.2d 850 [1–2]; Foster v. Wulfing, 20 Mo.App. 85, 87.

Appellant argues that the evidence shows that the contract to do the work was made with James Nicholson, Terry Nicholson, and Edward Bilhorn, and that the property was then owned either by James Nicholson and his wife or Nicholson & Bilhorn, Inc. And he points out that Village Center was not in existence at the time the arrangement was made for plaintiff to do the work and that the land was not conveyed to Village Center, Inc., until April 1956. Therefore, says appellant, since neither Bilhorn and the two Nicholsons, nor James Nicholson and his wife, nor Nicholson & Bilhorn, Inc., were made parties to the suit, the court was without jurisdiction over the subject matter and the judgment was void.

We are unable to agree with appellant's contention. We are of the view that, for the reasons which will appear, Village Center was the only "party to the contract" which the statute required be made a party to this action.

While it is true that one who seeks to avail himself of the benefits of the mechanic's lien law must substantially comply with the provisions of the applicable statutes, Wadsworth Homes, Inc. v. Woodridge, Mo.App., 358 S.W.2d 288, 291 [1], nevertheless, the purpose of the mechanic's lien law is to give security to mechanics and materialmen for labor and materials

1. All section citations refer to sections of RSMo 1959 and V.A.M.S.

furnished and it should be construed as favorably to those persons as its terms will permit. Ladue Contracting Co. v. Land Development Co., Mo.App., 337 S.W.2d 578, 584 [5]. An examination of some of the early cases will disclose that the purpose to be accomplished by the mandatory requirement of the statute that the parties to the contract be made parties to the lien action is to provide a party against whom a personal judgment will lie (the lien, of course, being only an incident to a personal judgment) and a party who is in a position to defend the claim forming the basis for the personal judgment sought, and thus the basis for the establishment of the mechanic's lien. Crane Co. v. Hanley, 53 Mo.App. 540; Steinmann v. Strimple, 29 Mo.App. 478, 482, 483; Russell v. Grant, 122 Mo. 161, 26 S.W. 958, 962; Steinkamper v. McManus, 26 Mo.App. 51, 52; Foster v. Wulfing, supra. Some of the foregoing cases and others, while recognizing that the statute's requirement that the parties to the contract be made parties to the lien action is mandatory, hold that there is substantial and sufficient compliance with the statute if one of the parties to a contract under which one did work or furnished materials is before the court even though there may have been other parties to that contract who were not made parties to the action. Steinmann v. Strimple, supra, 29 Mo.App. 484, 485; Hassett v. Rust, 64 Mo. 325, 327; Foster v. Wulfing, supra. Furthermore, it was pointed out in an early case that if the owner of the property against which the lien is sought desires that other persons be made parties to the action, he may, upon a proper showing, have those parties made defendants. Putnam v. Ross, 55 Mo. 116, 118.

■ It is true, of course, that Village Center, Inc., not having come into existence as a legal entity until some three months after plaintiff's contract was made, was not and could not have been a party to the contract at the time it was made. Under the undisputed evidence, however, Village Center, Inc., became "a party to the contract" in accordance with the stated plan of the Nicholsons and Bilhorn and in accordance with the understanding of the plaintiff. The evidence justifies, if it does not compel, the conclusion that the Nicholsons and Bilhorn and the plaintiff, at the time the agreement was made, understood and agreed that when Village Center, Inc., was organized as planned, it was to be plaintiff's sole debtor. We need not concern ourselves with what the situation might have been had Village Center never come into existence as a legal entity in accordance with the plan and understanding of the parties. The fact is that the corporation was formed as planned. Further, the evidence is such that no other conclusion is reasonable than that Village Center ratified and adopted the contract theretofore made by its incorporators and accepted the benefits of that contract and became liable under it. Austin & Bass Builders, Inc. v. Lewis, Mo.App., 350 S.W.2d 133, 138; Schmidt v. Morival Farms, Mo., 240 S.W.2d 952, 958. Under the evidence in this case plaintiff could not have obtained a personal judgment for the amount due him for labor performed under his contract against anyone other than Village Center, Inc. Thus Village Center was a party to the contract, it was the proper party to defend against the claim (in the event it was not just or proper), and it was a party against whom a personal judgment could be rendered. Therefore, we hold on this record that the fact that Village Center was made a party to this action satisfied the mandatory requirement of the statute that the parties to the contract be made parties to the action. If appellant believed, for example, that from his standpoint the Nicholsons and Bilhorn or Nicholson & Bilhorn, Inc., or James Nicholson and his wife were also liable and he wished those entities made parties to this action, he was at liberty to have proceeded to make the showing necessary to have accomplished his desire in that respect.

Appellant contends that the trial court should have directed a verdict for him for two reasons: (1) that the lien claim was not filed in time because plaintiff was not an original contractor, and (2) that the grading work performed by plaintiff was not such as to entitle him to a mechanic's lien under Section 429.010.

■ Section 429.080 requires that an "original contractor" file his lien account within six months and that others file their accounts within four months after the indebtedness shall have accrued. Plaintiff last worked on August 21, 1956, and his lien account was filed with the St. Louis County Circuit Clerk in January 1957. The account, while filed within six months, was filed more than four months after the indebtedness accrued, and thus it was filed in time only if plaintiff was an original contractor. One who makes a contract to perform labor or furnish materials with the then owner of the property is an original contractor. E. C. Robinson Lumber Co. v. Baugher, Mo.App., 258 S.W.2d 259, 260. Thus, says appellant, inasmuch as plaintiff's evidence was that at the time the Nicholsons and Bilhorn contracted with plaintiff they were acting for Village Center, Inc., which they intended to later form and inasmuch as they could not have been agents for a corporation not in existence, plaintiff did not contract with anyone who was the owner of the land at the time and consequently was not an original contractor.

■ The evidence makes it abundantly clear that the three parties with whom Vasquez dealt, even though they purported to act for a corporation which was not then in existence, also were acting as agents for whoever held the record title at the time, whether it was James Nicholson and his wife or Nicholson & Bilhorn, Inc. The plain inference from the evidence is that whoever held the record title held it for the benefit of the entity which was to develop the commercial tract and that James and Terry Nicholson and Edward Bilhorn represented and acted for the record owner.

So that the contract was made with the owner within the meaning of Section 429.-010, which provides a lien for work or labor performed "under or by virtue of any contract with the owner * * * or his agent * * *." Thus, in any event, plaintiff, who, incidentally, was the only contractor who did any work on the land prior to Dooly's ownership, was an original contractor and his lien claim was timely filed.

Section 429.010 provides in part: "Every mechanic or other person, who shall do or perform any work or labor upon * * * any building, erection or improvements upon land, * * * under or by virtue of any contract with the owner or proprietor thereof, or his agent, trustee, contractor or subcontractor, upon complying with the provisions of sections 429.010 to 429.310, shall have for his work or labor done, * * * a lien * * *."

■ In support of his claim that the work done was not lienable, Mr. Dooly points to the evidence that the work involved was the grading of vacant land in preparation for a shopping center; that no building was constructed thereon (prior to the conveyance to appellant), no concrete was poured and no materials were placed on the land such as brick or concrete blocks; that no permit for construction of any building was applied for or obtained; that no contracts were entered into for the construction of buildings; and he concludes from the foregoing that the grading work was not performed as part of a contract for the construction of a building.

The evidence and the reasonable inferences therefrom, considered from a standpoint favorable to plaintiff, showed also that the grading was work which had to be done before the proposed buildings could be placed at the locations designated on the plan and in order to provide adjacent parking areas and means of access to those areas and to the proposed buildings from Manchester Road; that the area was graded by the plaintiff in accord with building stakes

which had been placed on the ground; that the ground in designated places had to be prepared for concrete floors which would be poured in accordance with building plans and in accord with the over-all plan for the development of the tract; and that Mr. Bilhorn was present at a conference where a savings and loan company committed itself to make a construction loan on the property for three quarters of a million to a million dollars. The evidence showed further that Village Center, Inc., had entered into written lease contracts with Kroger, F. W. Woolworth Company, Sands Drugs, and probably with others, which called for the construction of designated buildings in the shopping center, and that those contracts were entered into prior to the time plaintiff finished his work.

It appears to us that there was substantial evidence from which a jury reasonably could have found that the work performed by plaintiff was lienable within the meaning of the language of Section 429.010, construed, as it should be, as favorably to plaintiff as its terms will permit. That is because there was evidence justifying a finding that the work plaintiff did was performed as an integral part of a total plan to proceed without delay to erect a group of buildings as a shopping center on the land in question. The evidence that the course of the creek which meandered through the property was changed; the evidence as to the leveling and filling, the construction of parking areas adjacent to designated building sites, the providing of means of ingress and egress for the proposed shopping center and the parking areas to and from Manchester Road, the preparing of subgrades for buildings on which concrete slabs were to be poured as the next step in the construction process—all amounted to evidence of essential work in the accomplishment of the specific plan and intention to build a shopping center including buildings. See Ladue Contracting Co. v. Land Development Co., supra, 337 S.W.2d 582–585; Arthur Morgan Trucking Co. v. Shartzer, 237 Mo.App. 535, 174 S.W.2d 226.

Appellant relies on the Morgan case, supra, for the contention, apparently, that for the work in this case to have been lienable it must have been a part of an "integral and indivisible contract for the construction of a building" on the property. The Morgan case does not hold that there must have been a "contract" to construct a building, as demonstrated by this language, 174 S.W.2d 228 [3]: "We think the controlling element for consideration in any such case is and ought to be, what was the immediate purpose of the owner in having the old building wrecked? Was it a part of the owner's scheme and plan to proceed without interruption or delay and as one project with the erection of a new building? If that was the intention, purpose, and aim of the owner, to be determined in each case from all of the attending facts and circumstances, the claim is and ought to be a lienable one, being in effect for work or labor upon the new building, erection or improvement; in other words, the destruction of the old was a necessary element or part of the construction of the new. It all comprised one project. On the other hand, work or labor performed for the sole purpose of wrecking and removing an old building, with no definite and formed plan or intention of proceeding without delay or interruption with a new building, erection or improvement, as in the case of Holzhour v. Meer, supra [59 Mo. 434], would not constitute a lienable claim, and for two reasons, first, because a lien cannot be established against a lot or land alone, and, second, the demolition would not be an integral and constitutive part of a fixed plan or project for enhancing the value of the land or lot by placing thereon a building, erection or improvement." (Bracketed citation ours.)

Certainly, it seems to us that the grading work in this case was an integral part of the plan to construct buildings on the land in question and that the trial court did not err in refusing to direct a verdict for appellant on the ground that the work done was not lienable as a matter of law.

Appellant contends that the trial court erred in giving plaintiff's instructions 1 and 4. Instruction 1, a verdict-directing instruction for a money judgment against Village Center, Inc., hypothesized, inter alia, that plaintiff, at the instance and request of James and Terry Nicholson and Edward Bilhorn, did the work in question and that at the time those three were acting for Village Center, a corporation to be formed, that Village Center was formed and accepted the contract and the benefits under it and directed the remaining work to be done and, while the remaining work was being done, the corporation took title to the tract of land. Instruction 4, a verdict-directing instruction, pertaining to the establishment of a mechanic's lien against Dooly's property, hypothesized, inter alia, that if the jury found for plaintiff under instruction 1 and further found that the work was done in connection with the construction of buildings, roadways, parking lots, etc., on the ground in question, and that within six months after the last work, the lien claim was filed in the office of the St. Louis County Circuit Clerk and within ninety days thereafter the suit was filed, etc.

Appellant contends instruction 4 failed to require a finding that, but assumed that, plaintiff was an original contractor by permitting the jury to find that the lien account was timely filed if it was filed within six months after the completion of the work. It is apparent that the instruction does make the assumption suggested and plaintiff so concedes. Plaintiff contends, however, that the matter omitted from instruction 4 is fully supplied by instruction 1 and that the instructions, read together, constitute a proper charge.

We are of the opinion, for the reasons which will appear, that instruction 4 is fatally defective for failure to require findings which would establish the essential fact that plaintiff was an original contractor and thus make the filing of his lien account within six months timely.

We have noted heretofore that while the lien account in this case was filed within six months, it was filed more than four months after the indebtedness accrued, and thus, under the provisions of Section 429.080, the lien account was timely filed only if plaintiff was an original contractor; or, in other words, if he contracted with the "owner or proprietor * * *, or his agent, trustee, contractor or subcontractor * * *." It is essential to show the timely filing of the lien account in order to establish the right to a mechanic's lien. Baker v. Smallwood, 161 Mo.App. 257, 143 S.W. 518; Wilson v. Berning, Mo.App., 293 S.W.2d 151, 156 [8].

It follows, therefore, that the timely filing of the lien account was an essential element of plaintiff's case to establish his right to a mechanic's lien and, of course, an essential element may not be omitted from a verdict-directing instruction, where, as here, the omitted element was not conceded.

In determining heretofore that there was sufficient evidence from which the jury reasonably could have found that plaintiff was an original contractor, we pointed out that under the evidence it was abundantly clear that the three parties with whom Vasquez dealt even though purporting to act for a corporation which was not then in existence, also were in fact acting as agents for whoever held the record title at the time, whether it was James Nicholson and his wife or Nicholson & Bilhorn, Inc., and that the evidence showed further that whoever held the record title held it for the benefit of the entity which was to be created for the purpose of developing the commercial tract. The fact, however, that there was evidence in the record to sustain a finding that Vasquez contracted with the owner's agents and was therefore an original contractor does not obviate the necessity for hypothesizing such a finding in the verdict-directing instruction; and that is true even though the supporting evidence is abundant,

clear, and undisputed, where, as here, it was oral.

Instruction 1 does not cure the defect of instruction 4. We have heretofore summarized the hypotheses of the pertinent facts as set forth in instruction 1. A finding of all those facts could not amount to a finding that plaintiff contracted with the owner of the property at the time he contracted to do the work.

 It is true that it is not necessary that the "owner" of the property at the time of the contract must necessarily be the one then vested with fee simple title. For the "owner" at the time might well be only an equitable owner exercising the rights of a proprietor in the land at the time a contract for work was made. See Waters v. Gallemore, Mo.App., 41 S.W.2d 870, 873 [7]. In the present case, however, the only fact as to ownership which the jury was required to find was ownership in an entity which did not exist until several months after the contract was made. The lien of a mechanic attaches at the time of the commencement of the work. Raithel v. Hamilton-Schmidt Surgical Co., Mo.App., 48 S.W.2d 79, 81 [2, 3]. Consequently, the owner referred to in the statute is the owner on the date the work was commenced. J. H. Magill Lumber Co. v. Carter, Mo. App., 17 S.W.2d 581, 583 [2, 3].

We cannot escape the conclusion that the failure of instruction 4 to require a finding of facts (by reference or otherwise) which would be tantamount to a finding that plaintiff was an original contractor and thus permit the jury to find that the lien account if filed within six months was timely filed was an omission of an essential fact prerequisite to plaintiff's being entitled to a mechanic's lien and that, consequently, the case must be reversed and remanded for a new trial.

Appellant has made many other attacks on instructions 1 and 4. It will be unnecessary to deal with those, but we are certain that plaintiff will wish to redraft his instructions in the light of the additional criticisms made of them by the appellant.

The judgment is reversed and the case remanded.

HOLMAN and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.